# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
September 13, 2016 Session

## STATE OF TENNESSEE v. CEPHUS D. SPICER

**Appeal from the Circuit Court for Rutherford County**
**No. F-70916A     Royce Taylor, Judge**

---

**No. M2015-01739-CCA-R3-CD – Filed November 1, 2016**

---

The defendant, Cephus D. Spicer, appeals his Rutherford County Circuit Court jury convictions of aggravated robbery, conspiracy to commit aggravated robbery, and unlawful possession of a firearm on a college campus, claiming that his due process rights were violated by the State's reading of the indictment to the jury without proper instructions, that the prosecutor's closing argument was improper, that the State failed to disclose exculpatory evidence, that the evidence was insufficient to sustain his convictions, and that the sentence imposed was excessive. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

W. Scott Kimberly, Murfreesboro, Tennessee, for the appellant, Cephus D. Spicer.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Nathan Nichols and Allyson Abbott, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Rutherford County Grand Jury charged the defendant, as well as Marcus Preston,[1] with one count each of aggravated robbery and conspiracy to commit aggravated robbery, and charged the defendant alone with one count of unlawful

---

[1]     Mr. Preston was also charged with one count of criminal impersonation.

possession of a firearm on a college campus, all arising out of the robbery of Tiffany Clark. The trial court conducted a jury trial in October 2014.

The State's proof at trial showed that, in the early morning hours of September 19, 2013, Ms. Clark, an undergraduate student at Middle Tennessee State University ("M.T.S.U."), was walking through the campus to her dormitory when she passed two men. She had never seen either of them before that night, and she assumed the men were fellow college students. Ms. Clark described the shorter of the two men, whom she identified at trial as the defendant, as having a dark complexion, longer or "grown out" hair, and facial hair; she described the other man, later identified as Mr. Preston, as "bigger" and "taller" with a lighter complexion and wearing a hat. Less than one minute later, the defendant approached her with a handgun and told her "to drop everything." When Ms. Clark did not immediately comply, the defendant repeated his demand, and Ms. Clark then dropped her iPad, her cellular telephone, and her backpack. The defendant picked up the items, and he and Mr. Preston began "[s]peed walking" away from her. Ms. Clark then ran to a nearby building, and someone there contacted the campus police. At trial, Ms. Clark identified photographs of the items stolen from her, including her iPad, her cellular telephone, her backpack, and the items that had been located inside her backpack. Ms. Clark also identified a photograph of a handgun which she agreed "look[ed] similar to the gun that" the defendant brandished on September 19.

On cross-examination, Ms. Clark admitted that, in her initial description of the suspects, she told police officers that the defendant had short hair, no facial hair, and was wearing a green hat and that the taller suspect had a moustache and short hair. Ms. Clark also acknowledged that she never viewed a photographic lineup of potential suspects. On redirect examination, Ms. Clark stated that she could not recall whether she had told officers that the defendant had facial hair but testified that she was certain the defendant was the man who robbed her.

Officer Darryl Duncan and Officer Thomas Praskach with the M.T.S.U. Police Department were on patrol on September 19 when they received a call at approximately 2:00 a.m. to be on the lookout for two armed robbery suspects. The suspects were described as two "male blacks," one of whom was taller and heavier and the other of whom was "a smaller thin male." At approximately 3:50 a.m., the officers encountered two individuals on the campus who "stopped in their tracks when they saw [the] patrol vehicle." Officer Duncan described the taller man, later identified as Mr. Preston, as "heavy set" and stated that the defendant was "a little smaller in height." Officer Duncan recalled that one of the men had facial hair.

Officer Praskach spoke with the defendant, who told him that "he had been looking for his cell phone that he lost in the grass." The two men told Officer Praskach that "they had been on the campus to meet some girls," but the men were unable to identify the name of the building they had visited or the names of the women they were purportedly there to meet.

While Officer Praskach spoke with the two men, Officer Duncan used his flashlight to scan the nearby area where he noticed an iPad and a cellular telephone "a couple of feet away" from the suspects behind some bushes. As he continued his search, Officer Duncan located a backpack that fit the description of the one stolen from Ms. Clark, and M.T.S.U. Officer Kyle Thompson, who had arrived on the scene, discovered a revolver less than a foot away from the backpack. Officer Duncan transported the two suspects to the campus police department, where the defendant was provided with his *Miranda* warnings. The defendant signed a waiver of his rights and initially denied involvement in the armed robbery of Ms. Clark. Subsequently, Officer Duncan had a conversation with the defendant. A video recording of that conversation was entered into evidence and played for the jury. On the video, the defendant tells Officer Duncan, "Yeah, I told him, let's just give it back. Even when we were, after we had picked it up and started running, I was like . . . you know what we should do is turn around and give it back right now."

Following this admission, the defendant spoke with M.T.S.U. Detective Lieutenant Jason Wofford and agreed to provide a written statement, which the defendant signed and which stated as follows:

> Sept. 19th we approached campus around 2:30 a.m. to meet up with some female friends when we decided to rob over something valuable. So we started following a female with a iPad and headphones in her ear when we approached her she was stunned and shocked so she began to place her phone and iPad down and we fled the scene back towards the baseball field where we sat an[d] waited then decided to make a move back home when we were approached by officers. I was not the one who initiated the weapon being involved nor did I make any threats to the female and we were not pointing or aiming the gun and it was not loaded. I do take full responsibility of my actions. We had conversations about returning her items but did not know what approach to come with. I am sincerely sorry for my actions and am willing to work things out in a decent manner.

- 3 -

At trial, Lieutenant Wofford explained that the video recording equipment had malfunctioned and had not captured the defendant's writing of the statement. Lieutenant Wofford denied forcing or coercing the defendant into making his statement.

After the defendant had provided his written statement, Lieutenant Wofford – at Mr. Preston's request – placed Mr. Preston in an interview room with the defendant. An edited video recording of the conversation between the defendant and Mr. Preston was entered into evidence and played for the jury. The four-and-a-half minute recording showed the two men seated across a table from one another while the defendant described to Mr. Preston his interactions with officers and the content of his written statement. Most of Mr. Preston's statements were unintelligible, but he did encourage the defendant to tell the truth and stated that he "need[ed] to walk out of here."

Following this conversation, the defendant expressed his interest in speaking with Lieutenant Wofford again. Lieutenant Wofford and Detective Lieutenant Kimberly Rednour joined the defendant and Mr. Preston, and a seven-and-a-half-minute video recording of their interaction was introduced into evidence and played for the jury. On that recording, the officers discussed the roles that each man played in the robbery of Ms. Clark. At one point, Lieutenant Wofford asked the defendant if Mr. Preston was intimidating him into providing false statements, and the defendant responded in the negative.

Ms. Clark was asked to come to the M.T.S.U. police station later that morning to identify her stolen property. Ms. Clark confirmed that the property recovered by the officers was in fact hers, but she was not asked to identify either of the suspects even though both men were at the police station at that time.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgments of acquittal, the defendant elected not to testify and chose not to present any proof.

Based on this evidence, the jury convicted the defendant as charged of aggravated robbery, conspiracy to commit aggravated robbery, and unlawful possession of a firearm on a college campus. Following a sentencing hearing, the trial court sentenced the defendant as a standard offender to a term of eight-years-and-six months' incarceration for the aggravated robbery conviction, to be served concurrently with a three-year sentence for the conviction of conspiracy to commit aggravated robbery. In addition, the court sentenced the defendant to a term of one-year-and-six months' supervised probation for the firearm possession conviction, to be served consecutively to

the aggravated robbery conviction, for an effective sentence of 10 years. Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal.

In this appeal, the defendant contends that the State's reading of the indictment violated his due process rights, that the prosecutor's closing argument was improper, that the State failed to disclose exculpatory evidence, that the evidence was insufficient to support his convictions, and that the sentence imposed was excessive. We will address each issue in turn.

*I. Reading of the Indictment*

The defendant first contends that his due process rights were violated by the State's reading of the indictment to the jury at the commencement of the trial, positing that the reading "removed the presumption of innocence" because the trial court did not properly instruct the jury regarding the indictment. We disagree.

As an initial matter, we note that the defendant failed to object to the reading of the indictment, thus waiving plenary review of this issue. Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Moreover, the defendant failed to request a special jury instruction to address his concerns that the reading of the indictment had shifted the burden of proof, which also results in waiver of this issue. *State v. Haynes*, 720 S.W.2d 76, 85 (Tenn. Crim. App. 1986) ("[A]lleged omissions in the charge must be called to the trial judge's attention at trial or be regarded as waived.").

In any event, the reading of the indictment "is an appropriate and proper procedure" which is "a mere accusation to inform the jury of the charges against the defendant" and "raises no presumption of guilt." *State v. Bane*, 853 S.W.2d 483, 484 (Tenn. 1993). In the trial court's opening instructions to the jury in the instant case, the court stated as follows:

> The [d]efendant has been charged by the State of Tennessee with a violation of state law. The document containing the charges is referred to as an indictment.
>
> An[] indictment is the formal accusation charging a [d]efendant with a crime, and is not evidence of anything.

The [d]efendant is charged with aggravated robbery, conspiracy, and possession of a weapon on a campus. The defendant has pled not guilty to the charges.

He is presumed innocent and may not be found guilty by you unless after hearing all of the evidence, the attorneys' arguments, and instructions of law, the 12 jurors seated in this case unanimously find that the State has proven its case beyond a reasonable doubt.

At the conclusion of the trial court's preliminary instructions, the prosecutor simply read the indictment in its entirety, without extraneous commentary. Given the trial court's explicit and proper instructions regarding the nature of the indictment and the presumption of innocence, no violation of the defendant's due process rights occurred. In consequence, the defendant is not entitled to relief on this issue.

## II. Prosecutorial Misconduct

The defendant asserts that the prosecutor committed misconduct during rebuttal argument by improperly commenting on the defendant's decision not to testify. In addition, the defendant asserts, without supporting argument, that the trial court erred by denying a mistrial on the basis of the prosecutor's comments. We disagree.

During the defendant's closing argument, defense counsel argued that the video recordings supported the position that Mr. Preston intimidated the defendant into falsely confessing to the underlying crimes. At one point, defense counsel cautioned the jury against making any negative inferences regarding the editing of the recordings but then stated that the State "took the portions they wanted to introduce." In rebuttal argument, the prosecutor stated as follows:

Mr. Preston didn't have the gun. Mr. Preston didn't pick up her stuff and run off. So, Mr. Preston wanted [the defendant] to tell the truth and not drag him down with him.

That is a reasonable thing you can take out of that video. And, again, the Judge told you in the jury charge that if there is all of this intimidation by Mr. Preston and [the defendant] is scared to death of Mr. Preston, they had the whole videotape. Why didn't they show it?

- 6 -

Why didn't they show all of this intimidation by Mr. Preston towards [the defendant] that forced him and tricked him into making this confession. They didn't play it because it doesn't exist. It is a conversation between two gentlemen. Nobody is threatened in that conversation. And all Mr. Preston – all Mr. Preston is trying to do is get [the defendant] to tell the truth. That is what that video shows, Ladies and Gentlemen.

They could have showed you something to the contrary, and they didn't.

The defendant did not object to these statements, but after the jury retired to deliberate, defense counsel moved for a mistrial on the basis that the prosecutor's statements regarding the defendant's failure to show the complete videotape impermissibly shifted the burden of proof to the defense and infringed upon his right to remain silent. The trial court denied the motion, finding that the prosecutor was merely "arguing that the video was available" and not that the defendant "should explain himself."

The defendant failed to lodge a contemporaneous objection to the remarks he now challenges on appeal. Thus, to be entitled to relief, he must establish not only that the remarks were improper but also that they rose to the level of plain error. *State v. Gann*, 251 S.W.3d 446, 458 (Tenn. Crim. App. 2007) (holding that defendant's failure to lodge a contemporaneous objection during challenged closing argument waived plenary review of the issue and left only plain error review). We see no basis for noticing the error despite waiver. *See* Tenn. R. App. P. 36(b). Even assuming that the argument was improper, in light of the overwhelming evidence of the defendant's guilt, as will be discussed more fully herein, it would be harmless. Thus, nothing suggests that "'a substantial right of the accused [was] adversely affected'" or that "'consideration of the error is "necessary to do substantial justice."'" *See State v. Smith*, 24 S.W.3d 274, 282, 283 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).

To the extent the defendant argues that the trial court erred by denying his motion for a mistrial, his failure to support this assertion with argument or citation to relevant authorities renders it waived. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). In any event, we find no abuse of discretion in the trial court's decision to deny the motion for mistrial. *See State v. Nash*,

294 S.W.3d 541, 546 (Tenn. 2009). "Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003) (citing *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991)). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." *Saylor*, 117 S.W.3d at 250 (quoting *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000)). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). Here, nothing indicated a manifest necessity for the declaration of a mistrial, and the trial court's decision to deny the motion did not result in a miscarriage of justice. *See Saylor*, 117 S.W.3d at 250.

### III. Failure to Disclose

The defendant next contends that his constitutional right to a fair trial was violated when the State failed to disclose the victim's alleged written statement. The State counters that the defendant has waived consideration of this issue by raising it for the first time on appeal and that, in any event, no proof exists that the State suppressed any evidence. We agree with the State.

The constitutional right to a fair trial imposes upon the State "duties consistent with the[] sovereign obligation to ensure 'that justice shall be done' in all criminal prosecutions." *Cone v. Bell*, 556 U.S. 449, 451 (2009) (quoting *United States v. Agurs*, 427 U.S. 97, 111 (1976) (citation and internal quotation marks omitted)). In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "Evidence 'favorable to an accused' includes evidence deemed to be exculpatory in nature and evidence that could be used to impeach the [S]tate's witnesses." *Johnson v. State*, 38 S.W.3d 52, 55-56 (Tenn. 2001) (citing *State v. Walker*, 910 S.W.2d 381, 389 (Tenn. 1995); *State v. Copeland*, 983 S.W.2d 703, 706 (Tenn. Crim. App. 1998); *United States v. Bagley*, 473 U.S. 667, 676 (1985)). The duty to disclose exculpatory evidence extends to all "favorable information" irrespective of whether the evidence is admissible at trial. *State v. Robinson*, 146 S.W.3d 469, 512 (Tenn. 2004) (appendix); *Johnson*, 38 S.W.3d at 56. *Brady* and its progeny create in the "individual prosecutor . . . a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

To prove a *Brady* violation, a defendant must demonstrate:

- 8 -

(1) that he requested the information (unless the evidence is obviously exculpatory, in which case the [S]tate is bound to release the information whether requested or not).

(2) that the State suppressed the information,

(3) that the information was favorable to the defendant, and

(4) that the information was material.

*Johnson*, 38 S.W.3d at 56 (citing *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995); *Walker*, 910 S.W.2d at 389); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."). The evidence is deemed material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). Plainly stated, establishing materiality requires a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435; *see Johnson*, 38 S.W.3d at 58.

In the instant case, Ms. Clark testified at the November 4, 2013 preliminary hearing – just six weeks after the armed robbery – that she had never given a written statement to law enforcement officers. At her October 9, 2014 trial, Ms. Clark was asked on cross-examination whether she had provided a written statement to officers on the night of the robbery, and she replied in the affirmative. Ms. Clark acknowledged that she was nervous during her testimony and that she was unable to remember everything that had happened at the police station following the robbery. M.T.S.U. Detective Lieutenant

- 9 -

Kimberly Rednour, who was involved in the case from the beginning, testified that she was unaware that Ms. Clark had ever given a written statement.

Once again, the defendant has waived review of this issue, this time by failing to raise it in his motion for new trial or either of his amended motions for new trial. *See* Tenn. R. App P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . [any] ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial but were not raised in the motion); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). "Issues raised for the first time on appeal are considered waived." *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996); *see also* Tenn. R. App. P. 36(b); *State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988); *State v. Rhoden*, 739 S.W.2d 6, 11 (Tenn. Crim. App. 1987); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987).

In any event, the defendant has failed to demonstrate that the State suppressed any evidence, let alone evidence that was favorable to him or material. Accordingly, we fail to discern any *Brady* violation.

*IV. Sufficiency*

Next, the defendant argues that the evidence adduced at trial was insufficient to support his convictions. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must

afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, aggravated robbery is "robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). A deadly weapon is defined as "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or [a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 39-11-106(a)(5). Criminal conspiracy is defined as follows:

> (a) The offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.
>
> . . . .
>
> (d) No person may be convicted of conspiracy to commit an offense, unless an overt act in pursuance of the conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired.

T.C.A. § 39-12-103(a), (d).

"It is an offense for any person to possess or carry, whether openly or concealed, with the intent to go armed, any firearm, . . . on any public or private school campus, grounds, recreation area, athletic field or any other property owned, used or operated by any board of education, school, college or university board of trustees, regents or directors for the administration of any public or private educational institution." T.C.A. § 39-17-1309(b)(1).

Here, the proof adduced at trial established that the defendant, accompanied by Mr. Preston, approached Ms. Clark on the M.T.S.U. campus while brandishing a handgun and demanded that she "drop everything." When she complied, the defendant picked up Ms. Clark's iPad, cellular telephone, and backpack, and he and Mr. Preston hurried away. Within two hours of the robbery, officers found the defendant and Mr. Preston, both of whom generally matched the description of the suspects provided by Ms. Clark; the men were still on the M.T.S.U. campus. While officers were questioning the defendant and Mr. Preston, other officers located all of Ms. Clark's belongings, as well as a revolver, in the immediate vicinity of the two suspects. At the police station later that same morning, the defendant admitted his involvement, executing a handwritten statement in which he outlined his plan with Mr. Preston: they arrived on campus at 2:30 a.m. on September 19 to meet friends but decided instead "to rob over something valuable"; they followed a woman who was in possession of an iPad; and they stole her belongings and fled the scene, hiding on the campus until they were discovered by police officers. Although the defendant denied "initiating the weapon being involved" and denied "pointing or aiming the gun" at Ms. Clark, he did not deny possessing the handgun during the robbery. Ms. Clark testified that she was certain that the defendant was the man who had robbed her.

The defendant primarily takes issue with Ms. Clark's identification of him, arguing that her vague and somewhat contradictory description of the robber, as well as her lack of identification of the suspects at the police station following the robbery, negated her credibility. The jury, however, as the trier of fact, resolves all questions of witness credibility, and it clearly found Ms. Clark's identification of the defendant to be credible. *See Cabbage*, 571 S.W.2d at 835.

Taking all of this into consideration, the evidence supports a finding that the defendant conspired with Mr. Preston to rob Ms. Clark, that the defendant acted with intent to rob Ms. Clark of her possessions through the use of a deadly weapon and by placing her in fear, and that the defendant was in possession of a firearm with the intent to go armed on a college campus. Thus, the evidence strongly supports the defendant's convictions of aggravated robbery, conspiracy to commit aggravated robbery, and unlawful possession of a firearm on a college campus.

*V. Sentencing*

Finally, the defendant contends that the eight-year-and-six-month sentence imposed by the trial court for his aggravated robbery conviction is excessive and that the trial court erred by ordering consecutive sentencing. Again, we disagree.

- 12 -

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category is used: the court must find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. *Id.* at 937-39; *see State v. Imfeld*, 70 S.W.3d 698, 707-08 (Tenn. 2002).

In the instant case, the record reflects that the trial court, in sentencing the defendant, considered all appropriate principles set forth in Code section 40-35-210(b). The court found no mitigating factors and only one enhancement factor to be applicable: that the defendant had a previous history of criminal convictions or criminal behavior. *See* T.C.A. § 40-35-114(1). The court then imposed a near-minimum sentence of eight years and six months for the aggravated robbery conviction. Because the trial court considered all relevant principles associated with sentencing, no error attends the imposition of this within-range sentence.

With regard to sentencing alignment, the trial court based its imposition of partially consecutive sentencing on the finding that the defendant was a dangerous offender. *See* T.C.A. § 40-35-115(b)(4). In making this finding, the trial court stated as follows:

> This is a dangerous offense. And using a weapon indicates little or no regard for human life. This was aggravated. The jury found this was an aggravated offense. There is no probation with regard to this. So, there is extended confinement required for this offense.
>
> And there is – with regard to the aggravated robbery and possession of a weapon on campus, that is the sort of sentence that relates to the seriousness of the matter. Both of those charges should be treated separately and involve consecutive sentencing.
>
> And I think an extended sentence is necessary to protect the public against further criminal conduct in that he's shown even after this that he would conduct criminal conduct.

Although the trial court did not state that the defendant had "no hesitation about committing a crime in which the risk to human life is high," *see* T.C.A. § 40-35-115(4), we believe such a finding is implicit in the trial court's remarks, and the trial court did explicitly find that the defendant's behavior indicated "little or no regard for human life," as set forth in Code section 40-35-115(4). Moreover, the trial court made both requisite *Wilkerson* findings, that the sentencing "relate[d] to the seriousness of the matter" and that the extended sentence was "necessary to protect the public against further criminal conduct." *See Wilkerson*, 905 S.W.2d at 937-39. Thus, the trial court's decision to impose partially-consecutive sentencing was not improper.

## *VI. Conclusion*

Based upon the foregoing analysis, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE